IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 02-cv-00901-WDM-CBS

ADVANTEDGE BUSINESS GROUP, L.L.C., a Colorado limited liability company,

      Plaintiff,

v.

MERIDIAN BENEFIT INC., a New Jersey corporation, et al.,,

      Defendants.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

Miller, J.

      This matter is before me on various motions for partial summary judgment and summary judgment filed by defendants American Family Mutual Insurance Company (American Family), Jeff R. Woody (Woody), and Thomas E. Mestmaker & Associates, Inc. (the Mestmaker Agency), Thomas E. Mestmaker, and Rick D. Hyman (collectively, "the Mestmaker defendants"). I have reviewed the parties' written arguments and the evidence presented with their briefs and find that oral argument is not required. For the reasons that follow, I will grant American Family's motions and grant the remaining motions in part.

## Background[1]

      At all times relevant to this lawsuit, plaintiff AdvantEdge Business Group, L.L.C. (AdvantEdge) operated in Colorado as a Professional Employer Organization (PEO). In

---

[1] Unless otherwise noted, the following facts appear to be undisputed. Further, I discuss only the facts relevant to the defendants whose motions are addressed in this order.

this role it provided or "leased" employees to its clients; payed the co-employees' wages, taxes, and benefits; and managed the paperwork responsibilities for the co-employees. In return, the client companies paid AdvantEdge its costs plus an administrative fee.

In 2001, AdvantEdge sought alternative health care coverage, including a welfare benefit plan, for the co-employees. Steve Garland, president of AdvantEdge, ultimately negotiated and purchased an ERISA Health and Welfare benefit plan for its PEO clients from defendant Meridian Benefit, Inc. (Meridian).[2] The process of this negotiation and the knowledge of those involved regarding the terms and status of the Meridian plan form the basis for AdvantEdge's claims against the defendants.

The Mestmaker Agency was the Managing General Agent for Meridian and, in this role, marketed the Meridian welfare benefit plans, including the benefit plan purchased by AdvantEdge. Rick Hyman, an employee of the Mestmaker Agency, was involved in the sale of the Meridian plan to AdvantEdge.

Woody acted as a "captive agent" for American Family, selling American Family insurance from the Woody Agency in Missouri.[3] Woody's role in marketing and selling the Meridian plan to AdvantEdge is disputed.

According to the Second Amended Complaint, in 2001 AdvantEdge contacted

---

[2]    The parties represent and provide evidence that Meridian is currently in bankruptcy, although there is no indication in the court docket sheet of this fact or that the claims against it have been stayed pending the resolution of the bankruptcy proceedings.

[3]    A "captive agent" is one who may sell only the insurance products offered by the principal.

Woody and an individual named David Williams to inquire about the Meridian plan.[4]
Williams and Woody introduced AdvantEdge to the Mestmaker defendants, who in turn
acted as Meridian's agent in marketing the Meridian plan.

The parties dispute whether the Mestmaker defendants marketed the Meridian plan
directly to AdvantEdge or marketed the plan through a broker to defendant David Williams
and through Williams to AdvantEdge.   The Mestmaker defendants contend that they
marketed the Meridian welfare plan only to independent agents and brokers who in turn
sold the plan to the PEO market.  It is undisputed that the Mestmaker Agency and Hyman
received commissions from Meridian for the sale of the plan to AdvantEdge.

Issues of importance during the negotiations with AdvantEdge included whether
Meridian was financially solvent, whether the Meridian plan included reinsurance and
"stop-loss" coverage, and whether Meridian, its plan, and the marketing defendants were
properly licensed in Colorado.

AdvantEdge executed a contract with Meridian with an effective date of November
1, 2001.

In February 2002, four months after AdvantEdge entered into the contract with
Meridian, Meridian admitted it did not have "stop-loss" coverage or reinsurance for the
benefit plan sold to AdvantEdge.  When AdvantEdge discovered these facts, it stopped

---

[4]      The record is not clear as to Williams's relationship to the other parties:
he is sometimes referred to as an independent broker, as a broker working for
AdvantEdge, and as an employee of the Woody Agency.  Although AdvantEdge lumps
Woody together with the moving defendants in the Second Amended Complaint,
Williams is proceeding *pro se* and has not filed a motion for summary judgment.
Accordingly, he has not weighed in on any of the factual assertions or legal arguments
raised in the summary judgment motions addressed in this order.

paying plan contributions to Meridian and brought this lawsuit.

In its Second Amended Complaint, AdvantEdge asserts nine claims against the Mestmaker defendants, Woody, Williams, and American Family (referred to collectively in the complaint as the "Brokerage Defendants"): (1) breach of contract (Second Cause of Action); (2) professional negligence (Third Cause of Action); (3) false representation (Fourth Cause of Action); (4) fraudulent concealment (Fifth Cause of Action); (5) constructive fraud (Sixth Cause of Action); (6) breach of fiduciary duty (Ninth Cause of Action); (7) negligent misrepresentation (Tenth Cause of Action); (8) violation of the Colorado Consumer Protection Act (CCPA), C.R.S. § 6-1-101, *et seq.* (Thirteenth Cause of Action); and (9) unjust enrichment/restitution (Fifteenth Cause of Action).

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*.

<u>Discussion</u>

In their various motions for summary judgment, defendants seek dismissal of all claims asserted against them.  Because the parties raise similar arguments with regard to the CCPA claim, I will address that claim in the context of all defendants.  With regard to the other claims, however, I will address each motion separately.

1.    <u>Colorado Consumer Protection Act Claim</u>

"The CCPA is a remedial statute intended to deter and punish deceptive trade practices committed by businesses in dealing with the public."  *Showpiece Homes Corp. v. Assurance Co.*, 38 P.3d 47, 50-51 (Colo. 2001).  The Act's "broad legislative purpose is 'to provide prompt, economical, and readily available remedies against consumer fraud.'"  *Id.* at 51 (citation omitted).  The Colorado courts give the CCPA a liberal construction in reliance on that broad purpose.  *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998).

AdvantEdge alleges defendants violated the CCPA by engaging in various deceptive trade practices defined in C.R.S. § 6-1-105(1).  This section provides in relevant part:

> (1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: . . .
>
> (b) Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; . . .
>
> (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; . . .
>
> (i) Advertises goods, services, or property with intent not to sell them as

5

advertised; . . .

(r) Advertises or otherwise represents that goods or services are guaranteed without clearly and conspicuously disclosing the nature and extent of the guarantee, any material conditions or limitations in the guarantee which are imposed by the guarantor, the manner in which the guarantor will perform, and the identity of such guarantor[;] . . .

(u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction; . . .

(z) Refuses or fails to obtain all governmental licenses or permits required to perform the services or to sell the goods, food, services, or property as agreed to or contracted for with a consumer[.]

C.R.S. § 6-1-105(1)(b), (g), (i), (r), (u), and (z).

To prevail on its claim that defendants violated the CCPA, AdvantEdge must establish:

(1) that the defendant[s] engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant[s'] business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant[s'] goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d at 235.

Defendants all challenge the first and third elements. They argue they did not engage in an unfair or deceptive trade practice because they did not act knowingly or with intent to mislead AdvantEdge regarding the status of Meridian and the Meridian plan. They also contend the challenged practices did not significantly impact the public as actual or potential consumers. In addition, American Family and the Mestmaker defendants assert the challenged practices did not occur in the course of their businesses.

6

First, I agree with American Family that any challenged practices did not occur in the course of its business.  "[T]he deceptive act must be related to the conduct of the *defendant's* business."  *Id.*, 969 P.2d at 234 (emphasis added).  Although AdvantEdge provides some evidence that Woody used American Family letterhead and operated out of an office with an American Family sign, it provides no evidence of any action by American Family itself with regard to the marketing or sale of the Meridian plan.  Indeed, in response to American Family's separate motion for summary judgment, AdvantEdge admits American Family had no connection with Meridian and did not sell group health care coverage like the Meridian plan.  Further, as discussed below, AdvantEdge concedes that American Family did not authorize Woody to sell products other than American Family insurance.

In the absence of any evidence that any deceptive trade practice occurred in the course of the American Family's business, I conclude summary judgment is proper for American Family on the CCPA claim.

With respect to the remaining defendants, I agree that the alleged deceptive trade practice did not significantly impact the public as actual or potential consumers of the defendants' services.  Therefore, I do not reach the parties' other arguments with respect to the CCPA claim.

Colorado law requires that a plaintiff establish that a deceptive trade practice significantly impacts the public as actual or potential consumers of the defendants' goods, services, or property.  *Hall*, 969 P.2d at 235.  Factors relevant to whether a challenged practice significantly impacts the public as consumers include:   (1) "the number of

consumers directly affected by the challenged practice," (2) "the relative sophistication and bargaining power of the consumers affected by the challenged practice," and (3) "evidence that the challenged practice previously has impacted other consumers or has significant potential to do so in the future." *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998).

My first determination must be who the consumers at issue are. AdvantEdge posits that the consumers are its co-employees and other members of the public who were beneficiaries under the Meridian plan. I disagree with this focus on the Meridian plan as the product at issue. Under the facts of this case, the defendants (Woody and the Mestmaker defendants) were not offering the Meridian plan for sale themselves and did not receive payment of premiums under the plan. Instead, they offered their services as brokers or marketing agents, and their compensation was a commission for their role in assisting the sale. Thus, defendants' contribution to the transaction was the provision of marketing and brokerage services, not the Meridian plan, and those services were provided only to AdvantEdge and not to its co-employees or other beneficiaries of the plan.[5]

This case is similar to the Colorado Supreme Court's decision in *Martinez*. There, an insured sued a doctor retained by State Farm to conduct examinations of its insureds and render an opinion to State Farm concerning the nature and extent of their injuries. The Colorado Supreme Court held that, on the facts before it, State Farm was the only

---

[5]     The Mestmaker defendants, for example, assert that they marketed the Meridian plan only to brokers. AdvantEdge disputes this with regard to its own purchase of the plan, arguing that the Mestmaker defendants marketed the plan directly to it, but it does not claim the Mestmaker defendants marketed the plan directly to its co-employees or any other plan beneficiaries.

"person" implicated as a consumer of the doctor's services.  969 P.2d at 222.  The court did not consider any impact of the doctor's examinations of the plaintiff or other members of the public as actual or potential insureds.  Here, although AdvantEdge's purchase of the Meridian plan–as a result of the marketing efforts of defendants–would have an ultimate effect on its co-employees as beneficiaries, the marketing services were provided only to AdvantEdge itself.  I conclude that the "goods, services, or property" at issue were the marketing and brokerage services and that AdvantEdge, not its co-employees, is the consumer.

AdvantEdge has not provided any clear evidence of the number of other companies to whom defendants marketed the Meridian plan other itself.  Further, I find there is no genuine dispute that AdvantEdge was a sophisticated business that had purchased other insurance plans for its co-employees and had bargaining power with respect to the marketing defendants to request and obtain changes in the terms of the Meridian plan.

Because I agree AdvantEdge has failed to establish a genuine issue of disputed fact on the issue of significant public impact, I will grant summary judgment for defendants on the CCPA claim.

2.   Motion for Summary Judgment by American Family

American Family filed a separate motion for summary judgment on the remaining claims (other than the CCPA claim).  I address the tort and contract claims separately.

a.   Breach of Contract and Unjust Enrichment Claims

To prevail on its claim for breach of contract, AdvantEdge must first show the existence of an express or implied contract with American Family.  *Tuttle v. ANR Freight*

*Sys., Inc.*, 797 P.2d 825, 827 (Colo. App. 1990) ("liability for breach of contract exists only

if the [plaintiff] can prove all the elements of the formation and breach of a contract").  The

essential elements of a contract are "competent parties, subject matter, a legal

consideration, mutuality of agreement, and mutuality of obligations."  *Denver Truck Exch.*

*v. Perryman*, 307 P.2d 805, 810 (Colo. 1957).  To establish its claim for unjust enrichment,

AdvantEdge must prove: "(1) that a benefit was conferred on the defendant by the plaintiff,

(2) that the benefit was appreciated by the defendant, and (3) that the benefit was

accepted by the defendant under such circumstances that it would be inequitable for it to

be retained without payment of its value."  *DCB Constr. Co., Inc. v. Central City Dev. Co.*,

965 P.2d 115, 119 (Colo. 1998).

On AdvantEdge's claims for breach of contract and unjust enrichment, American

Family argues that AdvantEdge cannot prevail because it can show no evidence that any

consideration or other benefit was paid to American Family.  Indeed, in its response to

American Family's statement of undisputed facts, AdvantEdge admitted that American

Family received no money or benefit from the sale of the Meridian plan.  Because receipt

of consideration or a benefit is an essential element to establish the existence of a contract

or to show liability for unjust enrichment, I conclude that American Family is entitled to

summary judgment on these claims.

    b.    Tort Claims[6]

American Family contends it cannot be held liable on AdvantEdge's tort claims

---

        [6]    American Family's arguments regarding the tort claims encompass the
claims for professional negligence, false representation, fraudulent concealment,
constructive fraud, breach of fiduciary duty, and negligent misrepresentation.

because Woody, the only marketing defendant with a connection with American Family, was an independent contractor and not an employee.[7]  For purposes of my analysis of the claims against American Family, however, I will assume Woody was American Family's employee.

An employer is liable for the unauthorized torts of its employees committed within the scope of the employment relationship.  *Powell v. City and County of Denver*, 973 F. Supp. 1198,1202 (D. Colo. 1997).  AdvantEdge's response to American Family's assertion that Woody was an independent contractor is replete with concessions that Woody's marketing or sale of the Meridian plan fell outside the scope of his relationship with American Family, which required that he sell only American Family products.  Further, AdvantEdge has conceded that American Family was not connected with Meridian and did not sell group health care plans such as the Meridian plan.  Accordingly, even if I assume Woody was an American Family employee, AdvantEdge cannot prove Woody acted within the scope of his employment.

Summary judgment is proper for American Family on all the tort claims asserted against it.

3.    Motion for Summary Judgment by Jeff Woody

Woody also filed a separate motion for summary judgment on the non-CCPA claims.

---

        [7]      AdvantEdge contends that Woody was an agent with apparent authority to act for American Family.  I agree with American Family that, with regard to the tort claims, the proper analysis is whether American Family may be held responsible under for Woody's actions under the doctrine of *respondeat superior.  See, e.g., Powell v. City and County of Denver*, 973 F. Supp. 1198,1201 and n.1 (D. Colo. 1997).

a.     Breach of Contract and Unjust Enrichment Claims

Woody contends he is entitled to summary judgment on the breach of contract and unjust enrichment claims because there was no agreement between Woody and AdvantEdge and because Williams was not Woody's agent and could therefore not bind Woody by his actions.

With respect to the first argument, the absence of a written agreement is not fatal to an action for breach of implied contract. A contract may be implied in fact where the conduct of the parties evidences a mutual intention to contract with each other. *Tuttle*, 797 P.2d at 829.

Woody's second argument fails to take into consideration his own actions with regard to the sale of the Meridian plan to AdvantEdge. Although there appears to be some dispute concerning Woody's role, AdvantEdge has produced evidence that Woody received a commission for the sale.

I conclude there are genuine disputes of material fact concerning Woody's role in the sale of the Meridian plan, including whether the conduct of the parties suggests an intent to enter a contract covering that sale. Accordingly, summary judgment is not proper on this record.

b.     Tort Claims

With regard to the tort claims, Woody raises the following arguments: (1) any reliance by AdvantEdge on alleged misrepresentations was unreasonable because AdvantEdge owed a non-delegable duty under federal and state laws to purchase a fully-funded, legally compliant plan and a duty to secure stop-loss coverage under a Trust

12

Agreement signed by AdvantEdge; (2) Woody cannot be held vicariously liable for Williams's conduct; (3) there is no evidence that Woody knew the representations made to AdvantEdge regarding Meridian's stop-loss coverage and reinsurance were false, and (4) Woody's conduct did not proximately cause AdvantEdge's damages.

I disagree that any of the statutes relied on by Woody establish a non-delegable duty on the part of AdvantEdge relevant to its claims. Woody merely lists various statutes and makes no explanation of what duty they create or how they are relevant to this case. Upon review of the statutory language, I agree with AdvantEdge that no such statutory duty  precludes its tort claims in this case.[8]  I also agree with AdvantEdge that the Trust Agreement did not expressly require it to secure stop-loss coverage for the Meridian plan. The language of the agreement is that AdvantEdge "intends" to secure the coverage, not that it "is responsible" for securing it.  Further, testimony by agents of AdvantEdge suggests that AdvantEdge believed it did not have to secure the coverage independently because it was told by defendants that the coverage was secured on its behalf.  Exhibit I, p. 192.

With regard to the issue of Woody's vicarious liability for Williams's conduct, summary judgment is not proper both because there appear to be factual issues regarding

---

[8]     Woody cites C.R.S. § 8-70-114 (defining "employing unit" for purposes of the Colorado Employment Security Act), C.R.S. § 10-16-214 (specifying what provisions must be in policies of group sickness and accident insurance under the Colorado Health Care Coverage Act and placing responsibility for compliance with state law on the carrier writing coverage rather than on an employee leasing company such as AdvantEdge), 29 U.S.C. § 1002(21) (defining "fiduciary" for purposes of ERISA), and 29 U.S.C. § 1104(a)(1)(B) (describing the prudent man standard for an ERISA fiduciary).

the relationship between Woody and Williams (and Williams and AdvantEdge) and because Woody ignores evidence of his own conduct in connection with the sale of the Meridian plan.  Factual issues likewise preclude summary judgment on the issue of proximate cause.

Finally, Colorado law does not require that a party who makes a false representation know it is false.  Liability may also attach if the person makes a representation recklessly, without knowing whether it is true or false.  *See, e.g., Pattridge v. Youmans*, 109 P.2d 646, 648 (Colo. 1941).

On the record before me, I decline to grant summary judgment for Woody on the tort claims.

4.    Motion for Summary Judgment by Mestmaker Defendants

The Mestmaker defendants move for summary judgment on all claims asserted against them.  As an initial matter, they assert that, as agents of Meridian, they cannot be held liable for the actions of their principal.  They also argue that a principal's undisclosed knowledge is not imputed to its agent.  Although AdvantEdge does not directly respond to this assertion, I conclude that these arguments are unavailing on this record where there are allegations and evidence that the Mestmaker defendants failed to disclose the results of their own actions (for example, the fact that Meridian repeatedly failed to respond to requests for copies of reinsurance coverage).

a.    Breach of Contract and Unjust Enrichment Claims

The Mestmaker defendants argue summary judgment is proper on the contract and unjust enrichment claims because there was no contractual agreement between them and

14

AdvantEdge and because there was no evidence that they received any consideration or benefit from AdvantEdge itself.

I conclude factual disputes preclude summary judgment on these claims.[9]

b.   Tort Claims

The Mestmaker defendants' arguments regarding the tort claims are similar to those asserted by Woody and, for the reasons discussed above, are unavailing.

Accordingly, it is ordered:

1.   The motion for partial summary judgment (on the CCPA claim) filed by American Family and Woody on July 1, 2004 (Docket No. 171), is granted.

2.   The motion for summary judgment filed by American Family on November 1, 2004 (Docket No. 217), is granted.

3.   The motion for summary judgment filed by Woody on November 1, 2004 (Docket No. 219), is denied.

4.   The motion for summary judgment filed by the Mestmaker defendants on December 3, 2004 (Docket No. 237), is granted in part to dismiss the CCPA claim and denied with regard to all other claims.

5.   As a result of this order, all claims asserted against American Family are dismissed, and the CCPA claim is dismissed against all defendants.

6.   This case remains pending on the claims asserted against Woody and the Mestmaker defendants for breach of contract, unjust enrichment, professional

---

[9]   I decline to reach the Mestmaker defendants' arguments regarding fiduciary duties and express versus implied contracts, as these were raised for the first time in their reply brief and were thus waived.

negligence, false representation, fraudulent concealment, constructive fraud, breach of fiduciary duty, and negligent misrepresentation.

DATED at Denver, Colorado, on March 29, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge